# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| VAN CHASE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 3:13-cv-957 |
| | )   Judge Campbell |
| CLARKSVILLE-MONTGOMERY | ) |
| COUNTY SCHOOL SYSTEM | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Van Chase filed this action on September 13, 2013, against the Clarksville-Montgomery County School System, asserting claims of harassment, discrimination, and retaliation on the basis of his age and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.A. § 621 *et seq*; and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-410(a)(1). He also asserts a claim pursuant to 42 U.S.C. § 1983. On March 4, 2014, Plaintiff filed an Amended Complaint (Docket No. 28). Now before the Court is Defendant's motion for summary judgment as to all claims set forth in the Amended Complaint. The motion has been fully briefed and is ripe for review. For the reasons set forth herein, the Court will grant Defendant's motion for summary judgment.

## I.    FACTUAL BACKGROUND

The facts set forth herein are undisputed for purposes of Defendant's motion, unless otherwise indicated.

Plaintiff has been employed by Defendant as the Senior Army Instructor at Northeast High School since 1997. He was over 40 when he started the job and has maintained his same

employment position since 1997. As the Senior Army Instructor, he is responsible for the entire Army Junior Reserve Officer Training Corps (JROTC) battalion within the high school. As a JROTC instructor, Plaintiff is licensed by the State of Tennessee and evaluated both by the State's teacher evaluation system and by the Army's evaluation system. Plaintiff is over age forty and is African American. For much of the time period at issue, Plaintiff's immediate supervisors were Galea Jefferies, the principal of the high school, and David Taylor, Director of Army Instruction. Ms. Jefferies and Mr. Taylor did not have final decision-making authority over employment decisions that could have affected Plaintiff's pay, job status, hiring, or firing.

Plaintiff alleges that starting around 2009, Defendant created a hostile work environment on the basis of his age and race, by the following actions, many of which are disputed by Defendant:

- Defendant blamed Plaintiff for problems occurring as a result of inadequate staffing. In particular, Plaintiff received a reprimand in the form of a Letter of Concern in October 2009 for issues Plaintiff considers to have been caused by Defendant's inadequately staffing the program.

- Defendant placed Plaintiff in situations in which he was destined to fail, such as requiring him to teach a course that was not part of the JROTC curriculum. He had to teach this course nine weeks without a course curriculum, and Defendant then disciplined him for his performance. Defendant also subjected him to three unannounced, untimely evaluations. First, on February 27, 2012, his co-worker was ill and had a substitute. This required Plaintiff to be responsible for both his class and his co-worker's class. Mr. Taylor came on this day to evaluate him and then sent Plaintiff a critical e-mail about his performance. On another occasion, Mr. Taylor interrupted Plaintiff's class and passed out a teacher evaluation

before Plaintiff could finish his instructional time. On March 23, 2013, Ms. Jefferies came unannounced to evaluate him the day before spring break.

- Defendant treated Plaintiff differently with respect to his military rank. This included frequently calling him "Mr. Chase" in front of his cadets, which implied that he was a civilian and undermined his authority, and which did not happen to his co-worker.

Defendant frequently belittled Plaintiff. For example, while Plaintiff was fitting his cadets for uniforms, Ms. Jefferies told Plaintiff, in front of the students, that he should have already completed that process. Another time, after Plaintiff received a successful Final Inspection, Mr. Taylor made a statement Plaintiff interpreted to mean that if Mr. Taylor had been scoring the inspection, he would have given a lower score. Also, ROTC Camp Commander Colonel Harry Houchens was verbally abusive to Plaintiff.

- Defendant treated Plaintiff differently than other Army instructors. For example, Mr. Taylor changes Plaintiff's assignments at summer camp, which would alter the dates Plaintiff was required to be at camp. On one occasion, Mr. Taylor told Plaintiff to come to camp on a Saturday, but no one was there. Others did not arrive until Monday. This caused Plaintiff to miss the graduation of his cadets. No other employees were asked to come early to camp.
- In Spring 2012, Ms. Jefferies conducted secret meetings with students concerning Plaintiff.
- Defendant gave Plaintiff more difficult assignments and job duties, such as teaching non-JROTC classes, not allowing him to have enough practices or to use the meeting period provided for other school organization and activities for practices before Formal Inspection.
- Defendant treated Plaintiff differently than other similarly-situated employees of a different race or age. For example, in the 2009–10 school year, Defendant no longer allowed Plaintiff to leave during his planning period as he had previously done, but he saw other instructors

3

leave during the planning period. Also, in 2013 Defendant gave Plaintiff a reprimand in the form of a Letter of Concern for not wearing the proper uniform. Plaintiff felt he should not have been reprimanded because it was Spirit Week at the school, which constituted an exception to the uniform policy. Plaintiff felt this was unfair because his co-worker, Mr. Love, was wearing the same uniform he was wearing. The parties dispute the race of Mr. Love. Plaintiff represents that he is Caucasian, but Defendant has provided a form that appears to be part of Mr. Love's personnel paperwork with the school system in which Mr. Love indicated that he is African American. Defendant also required Plaintiff to volunteer additional time and perform more job functions than his counterparts. For example, while many ROTC instructors were only required to prepare for two classes per day, Plaintiff had to prepare for three or four, contrary to regulations. Plaintiff felt he also should have had an additional planning session.

Docket No. 52 at 2– 8 (Pl.'s Brief).

Plaintiff alleges the following constituted adverse employment decisions.: (1) he received a Letter of Concern in October of 2009 based on problems he considers to have been caused by Defendant's refusal to adequately staff the JRTOC program; (2) during the 2013–2014 school year when a co-worker had a stroke, Plaintiff had more JROTC duties; (3) in May 2012, Defendant blamed Plaintiff for various infractions committed by his students when a substitute had problems with student behavior in one of Plaintiff's classes; and (4) in 2014, Plaintiff received a Letter of Reprimand for missing rifles and was placed on a Developmental Plan. Plaintiff agreed he was responsible for the missing rifles and understood getting a Letter of Reprimand, but he disagreed with his placement on a Developmental Plan for a disciplinary issue, because a second placement could cause him to be recommended for decertification, which result in his losing his job. *Id.* at

4

21–22 (Pl.'s Brief). Defendant disputes some of Plaintiff's factual characterizations of what occurred and also disputes that any of these events legally constitute adverse employment decisions

Plaintiff complains that he was treated differently than similarly-situated co-workers of another race and younger age. For example, he alleges the following: (1) Defendant prohibited him from leaving campus during school hours, yet he saw other instructors coming and going; (2) Mr. Taylor held Plaintiff to a higher standard concerning the uniform policy and his attire at the school; and (3) Defendant continuously imposed more responsibilities on him than his counterparts. *Id.* at 22.

On March 23, 2012, Plaintiff made his first contact with Defendant's Chief Human Resources Officer, Jeanine Chester, and advised her that he was beginning to notice what he perceived to be a pattern of discrimination based on his age and race. Plaintiff met with Ms. Chester in April 2012. He told her that he felt he was being discriminated against, but he could not put his "finger on the specifics." Plaintiff filed an internal complaint of discrimination with Ms. Chester on July 13, 2012. Ms. Chester met with him again and asked him questions regarding his complaint. Ms. Chester's final report with her investigative findings indicates that she had conducted six interviews related to the complaint and had reached the following conclusions: Plaintiff had been unable to provide specific allegations of discrimination; although Plaintiff's supervisor had discussed with him during his evaluation areas for improvement related to his teaching and program management; there was no evidence supporting Plaintiff's fear that Defendant intended to terminate his employment; Defendant had not discriminated against Plaintiff on the basis of age or race; and Defendant had taken no adverse action against Plaintiff. Ms. Chester ended the report with a recommendation that Plaintiff continue to communicate with his supervisors to ensure that he understood their expectations and contact her again if further assistance was needed regarding his

complaint. Docket No. 52-14 at 2 (Discrimination Complaint). Plaintiff did not return to discuss his concerns further with Ms. Chester.

After filing his internal complaint of discrimination with Defendant, he continued to maintain his position as Senior Army Instructor at the high school. During Plaintiff's entire tenure with Defendant, he has always received the pay of a Senior Army Instructor, and he continues to have the same benefits he has always had. During his seventeen years as a JROTC instructor with Defendant, he has received three letters of concern (October 5, 2009, September 7, 2011, February 28, 2013) and one letter of reprimand (January 22, 2014).

On October 1, 2012, Plaintiff filed his Equal Employment Opportunity Commission (EEOC) Charge of Discrimination. On April 30, 2013, the EEOC issued a Notice of Right to Sue with respect to Plaintiff's Charge of Discrimination. The Notice had Plaintiff's correct address on it, and he received the Notice. On June 17, 2013, the EEOC sent another Notice of Right to Sue regarding the ADEA claim only. Plaintiff filed this action on September 13, 2013. It was not until December 18, 2013 that Plaintiff received notice of its intent to rescind the April 30, 2013 Notice.

## II. STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment requires that the Court view the "'inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "The mere

existence of a scintilla of evidence in support of plaintiff's position[, however,] will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249–52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247–49).

## III. LEGAL ANALYSIS

The defendant has moved for summary judgment, asserting that it is entitled to judgment as a matter of law in its favor as to all claims asserted in the Amended Complaint.

### A. Title VII, THRA, and ADEA Harassment/Hostile Work Environment Claims

As an initial matter, Defendant claims that Plaintiff's ADEA claim was not timely filed because he did not filed it within 90 days after receiving his initial EEOC Notice of Right to Sue. A plaintiff may commence an ADEA action in federal court as early as sixty days after filing a charge of discrimination with the EEOC or as late as ninety days after receiving an EEOC right-to-sue notice. See id. § 626(d), (e). Because the Court agrees with Defendant that Plaintiff cannot establish a *prima facie* case of discrimination, hostile environment, or retaliation, the Court does not reach this timing issue.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The THRA is a state law analogue to Title VII

7

and the statutes are analyzed identically." *Mullins v. Goodyear Tire & Rubber Co.*, 291 Fed. Appx. 744, 745 n. 1 (6th Cir.2008). Thus, the Court need only conduct a single analysis for these claims.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a *prima facie* case of a hostile work environment under Title VII, Plaintiff must show that: "(1) [the employee] is a member of a protected class; (2) [the employee] was subjected to unwelcomed racial harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with [the employee's] work performance by creating an environment that was intimidating, hostile, or offensive; and (5) the employer is liable." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir.2007) (internal brackets omitted).

In the Sixth Circuit, the hostile-environment doctrine is available in an ADEA action. *Crawford v. Medina Gen. Hosp.,* 96 F.3d 830, 834 (6th Cir. 1996); *see also McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 358 (1995) ("The ADEA and Title VII share common substantive features and also a common purpose: the elimination of discrimination in the workplace.") (internal quotation marks and citation omitted)). The criteria for a *prima facie* hostile-environment claim under the ADEA are:

1. The employee is 40 years old or older;

2. The employee was subjected to harassment, either through words or actions, based on age;

3. The harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and

4. There exists some basis for liability on the part of the employer.

*Crawford*, 96 F.3d at 834-35.

Plaintiff is over forty years old and is African American, so he is a member of a protected class under each statute. To support his claim that he was harassed on account of that membership, Plaintiff has presented evidence of a handful of incidents over a five-year period. Assuming Plaintiff's allegations are true, he has offered no evidence that any of the alleged incidents were motivated by his age or his race. Furthermore, the alleged incidents do not support a finding that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir.2007) (internal quotation marks and citation omitted). This requirement has both an objective and a subjective component. *Id.* "It requires the court to examine, under the totality of the circumstances, 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" *Id.* (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)) (alteration in original). The incidents of which Plaintiff complains were not sufficiently frequent or severe to support a finding that Defendant unreasonably interfered with his job performance. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (limiting Title VII's application to only "extreme" conduct to avoid turning the statute into a "general civility code"); *Berryman v. SuperValu Holdings, Inc.*, No. 3:05CV169, 2010 WL 1257851, at *9-10 (S.D. Ohio Mar. 31, 2010) aff'd, 669 F.3d 714 (6th Cir. 2012) (reviewing Sixth Circuit cases on conduct that constitutes a severe and pervasively hostile work environment). "Conversations between an employee and his superiors about his performance does not constitute harassment simply because they cause the employee distress." *Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir. 1998).

Because Plaintiff's evidence does not support a finding that he was subjected to severe, pervasive harassment on the basis of his age or his race, the Court will dismiss his hostile environment claims.

### B. Title VII, THRA, and ADEA Discrimination Claims

Plaintiff asserts that Defendant discriminated against him on the basis of his age and race, in violation of Title VII, THRA, and the ADEA. A plaintiff may establish a *prima facie* claim of employment discrimination under Title VII, the THRA, or the ADEA based upon direct or indirect, circumstantial evidence. Where, as here, a plaintiff offers only indirect evidence of discrimination, the claims are analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas* and its progeny, the plaintiff must first make out a *prima facie* case of discrimination by showing: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). If the plaintiff presents facts which, if true, would prove each of these elements, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the termination. *McDonnell Douglas Corp.*, 411 U.S. at 802. "If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Blizzard*, 698 F.3d at 283 (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003)). "Despite the shifting burdens of production, the ultimate burden of persuasion remains at all times with the plaintiff." *Lindsay v. Yates*, 578 F.3d 407, 421 (6th Cir. 2009).

Again, Defendant does not dispute that as an African American male over the age of forty, Plaintiff is a member of two protected groups on the basis of his race and his age. Defendant also

concedes, for summary judgment purposes only, that Plaintiff was qualified for the job in question. However, Plaintiff cannot establish the third required element of a *prima facie* case because he did not suffer an adverse employment action. The verbal and written reprimands Plaintiff received do not constitute adverse employment actions. *See Hill v. Nicholson,* 383 Fed. Appx. 503, 509 (6th Cir. 2010) (holding that a written counseling was not an adverse employment action because it did not have "any long-term impact on the terms or conditions of [the plaintiff's] employment"). "'In general, a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary.'" *Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir.2008)). Here, Plaintiff's wages were not impacted by the verbal or written reprimands he received. Indeed, none of Defendant's alleged actions constitute adverse employment actions. Plaintiff is also unable to establish the fourth required element of a *prima facie* case because there is no evidence that would support an inference of discrimination. Plaintiff's "[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination." *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir. 1986)

Because Plaintiff cannot establish a *prima facie* case of discrimination, the Court need not consider whether Defendant has any legitimate, non-discriminatory reasons for its actions. Defendant is entitled to summary judgment on his discrimination claims.

### C. Title VII, THRA, and ADEA Retaliation Claims

Under each of these statutes, to establish a *prima facie* case of retaliation, Plaintiff must show that (1) he engaged in protected activity; (2) his exercise of such protected activity was known to the defendant; (3) the defendant thereafter took an adverse employment action against him or the employee was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there

was a causal connection between the protected activity and the adverse employment action or harassment. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674 (6th Cir. 2013), reh'g denied (Apr. 12, 2013) (Title VII context); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491-92 (6th Cir. 2010) (ADEA context). As the Court has already found that Plaintiff was not subjected to an adverse employment action or to severe or pervasive harassment, the Court will enter judgment for Defendant on his retaliation claims.

### D. Claims Under 42 U.S.C. § 1983

Plaintiff raises a municipal liability claim against Defendant. A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.2005). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694, 98 S.Ct. 2018.

Here, Plaintiff alleges that Defendant had a practice, policy, or custom of failing to conduct a thorough investigation of discrimination complaints and to follow their own Title VI flowchart. First, Plaintiff complains that Defendant's Chief Human Resources Officer, Ms. Chester, conducted an investigation into his complaint and rendered her decision without having conducted a hearing. Defendant's policy did not require a hearing. The policy only requires that *if* a hearing is conducted,

it must be documented. Docket No. 52-13 at 2, ¶ 5.2 (Clarksville-Montgomery County School System Title VI and Other Discrimination Complaints Procedure). Plaintiff offers no argument or case law indicating that a hearing is legally required. Plaintiff also complains that he is unclear whether Ms. Chester is the Title VI coordinator, but if she was, the process would have been inherently unfair, because she would have no one to validate her findings. Defendant counters that Ms. Chester is the Title VI Coordinator, which is not unfair because her investigatory findings can be appealed to the Director of Schools. It is undisputed that Plaintiff did not appeal her investigatory findings. Again, Plaintiff offers no case law holding that the school's human resources officer cannot be the Title VI coordinator. Last, Plaintiff argues that although Ms. Chester's investigatory findings were sent to the Director of schools, the Director took no action on it. It does not appear to the Court that the Director was required to take action pursuant to the school's Title VI procedure, nor does Plaintiff cite any case law suggesting that such action is legally required.

Because Plaintiff has not demonstrated any violation of his constitutional or statutory rights, the Court will enter judgment for Defendant on this claim.

## IV. CONCLUSION

As set forth herein, Defendant is entitled to summary judgment in its favor on each of Plaintiff's claims, and the Court will enter judgment in Defendant's favor accordingly.

An appropriate order is filed herewith.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE